And start with Pollard v. The New York Methodist Hospital, 15-3231. Mr. Hassan. Your Honors, good morning. May it please the Court. My name is Mr. Abdul Hassan, and I represent the Plaintiff Appellant Jacinta Pollard. Your Honor, the District Court's grant of summary judgment to the defendant on the plaintiff's FMLA termination claim should be reversed for about five to six compelling reasons. First, the first reason involves the medical certification. When the plaintiff submitted her medical certification on March 26, 2013, she was entitled to the leave she was seeking at that time. As such, when she was terminated on about April 1, 2013, just about four days later, that termination was wrongful in violation of the FMLA because at that point her absence was protected by the FMLA. That's what is at issue, whether she was entitled to it. That is correct. It turns on several things. You agree that she was not incapacitated prior to March 28, 2013, don't you? Yes, Your Honor, we do agree. But the regulation doesn't require incapacitation prior to treatment. With respect to 825.115A, there had to be three days of incapacitation and treatment within seven days. The first treatment within the first day of incapacitation, which occurred in this case. Remember, there are four different definitions. Right. I was just going to the 115A. Her first day of treatment after her incapacity was beyond the seven days. No, Your Honor, the incapacity here and the first day of treatment was on the same day, which is logical in this circumstance especially. You know, if I get hit by a car, there's no rule that says I have to wait until the next day to get treatment. I might be dead by then. Additionally, the treatment on the 6th of April also qualifies as a first treatment, depending if you need that, because there are extenuating circumstances in this case. And the doctor himself said that she should have the next treatment within a week, which is seven days. She couldn't see the doctor because he wasn't available in seven days. He was available in eight or nine days. And there is no rule that says the extenuating circumstance exception doesn't apply. In fact, when you look at the record, there is no extenuating circumstances provision in the section of the regulation that requires treatment within seven days. It's in another section. Well, it's in the section that says two treatments. And one of the two treatments is obviously the first treatment. But that's in the 30-day provision. It's not in the seven-day provision, right? Well, the seven-day deals with the first treatment, and the 30 days deals with two treatments, of which the one within seven days is one of the two treatments. But moreover, Your Honor, in coming up with the seven-day provision, the DOL said it was considering the difficulty in getting a doctor. So, for example, let's say in seven days there's some big natural disaster or something. Are you going to blame the plaintiff for not meeting the seven days? The whole purpose of the seven days was to ensure that the condition was such that it needed treatment in seven days. And here the doctor actually said within a week, which is seven days. That's an interesting argument. It may well be a valid one, but it's something of an uphill fight in view of the fact that the statute explicitly provides for extenuating circumstances with respect to other things but not with respect to that. You may well be right. But what's your strongest—what is your strongest argument? Your Honor, the strongest argument is the one I started with. When she presented that medical certification, she was entitled to leave at that point. Protection applied. Here's the—and this court's decision in Graziadio just recently said that when a plaintiff presents a completed medical certification, she is then entitled to leave the benefits of the act. The Seventh Circuit—and that's consistent with other cases and the regulation. The regulation says when you submit a completed certification pending receipt or pending a second or third certification, you're entitled to the provisions of the act. So in this case— The question is whether she's suffering from a serious medical condition. I would have thought that your stronger argument was not under 115A but under 115E. I'm getting to that, Your Honor, but there are two different types of argument. Why don't you talk about 115E? 115E, yes. That one fits like a glove because here she states very clearly that she was in pain. She couldn't continue working, and therefore she had to go get treatment. So she states it herself. The medical evidence also backs it up. The doctor said, I consider this in the global sense of a benign soft tissue that was expanding, getting painful, obstructing the function of the patient, and, of course, it needed urgent care. Would you address, though, the other part of Dr. Sabani's testimony in which he said it was not an emergency, it was not something that could have been pushed off by over 35 days? So how does that square with the idea that this was a serious medical condition? Oh, very different. You don't have to have an emergency to have a serious medical condition. What Dr. Sabani said was that it needed urgent care. This was something that was obstructing the patient. What Council was asking the doctor, well, would this cause her to die? Would this cause her to suffer serious dysfunction and bodily harm? Of course not. But you don't need that. That's a distraction from the rule. So here in this case, the plaintiff states clearly, look, the condition started one or two months before. It got progressively worse. It was growing. It was getting more painful. She was a medical clerk. She walked all day, and it was affecting her ability to walk, wear shoes, ambulate, and so on. So she said, look, I can't take this pain anymore. They might fire me, but I just can't work anymore. I have to go get treatment. So she went. She got the treatment. The doctor said, yes, you need to take care of this immediately or as soon as you can. It's urgent. And she got the medical treatment, and it fits the definition. There were multiple treatments. The treatment on March 19th, because evaluations and examinations are considered treatment, March 19th, March 28th, April 6th, April 13th. 115E, the entitlement can be established in two different ways. It says that a serious health condition can be satisfied with respect to any period of absence to receive multiple treatments, including any period of recovery therefrom by a health provider for, and I'm skipping one and going to two, a condition that would likely result in a period of incapacity of more than three consecutive full calendar days in the absence of medical intervention or treatment. Now, with respect to a motion by the defendant for summary judgment, the defendant had the obligation to prove that the plaintiff did not come within that condition. And what evidence did the defendant have to show that the plaintiff would not have required three or more days of consecutive calendar days in the absence of medical treatment? Your Honor, I'm not aware of any. The defendant hired a doctor, an expert, but he never used them. So if the defendant didn't have any evidence to show that the plaintiff wouldn't have required three consecutive days, you're saying the defendant did not show entitlement to summary judgment? Absolutely. I couldn't have said it better. And moreover, not only was there an absence of evidence from the defendant, there was very strong evidence from the plaintiff herself as detailed in the… It's in disputed condition. It is a classic dispute. In fact, it's strongly in favor of the plaintiff, but at minimum, it's a strongly disputed provision. And that provision, Your Honor, just to tell that you want Section E, that would explain a lot of the other cases in which plaintiffs are routinely given leave under the FMLA for treatment and recovery. Thank you very much, Mr. Hassan.  Good morning, Your Honors. May it please the Court. I want to start by answering Judge LaValle's question. Sure. Regarding Section E and continuing treatment, I would be happy to do so. Several things. The record makes clear that the plaintiff was not at any point incapacitated. So whether or not this would likely… What does it say in 115E2 that the plaintiff has to have been incapacitated? E2 talks about, in the report that I was focusing on, talks about whether the plaintiff would have had three days of incapacity in the absence of medical treatment. Yes. Where did you prove that the plaintiff would not have had three days of incapacity in the absence of medical treatment? Your Honor, we didn't present evidence to prove that. That would be an impossible ability to prove. Where is the evidence in the record that shows that that wouldn't have been so? Well, the doctor, Dr. Sathani, specifically said that there was no condition that was an emergency. There was nothing that put her medical care in danger. I also think it's important not to look at subsection 2, isolated from the beginning of the provision of 29 CFR 825.115E. Before you leave that, though, when she had the operation, she was plainly incapacitated and unable to return to work, according to her doctor, until sometime in April. She was incapacitated for more than three days. They didn't have to anticipate whether the condition would result in incapacity for more than three consecutive days. It's undisputed she was incapacitated for more than three days. Your Honor, you are correct, but giving the statute that interpretation would do away with the very purpose of the statute. The statute specifically says, as does the congressional history and the legislative intent, that surgical procedures that are typically performed outside a hospital, which this was, right, outpatient procedures, are not generally covered by the statute. It is not to say that if, God forbid, something went terribly awry, that which was not a serious health condition at the beginning could convert to one. You have to read the statute and the regulations before you turn to statements in the congressional record. And even a statement in the congressional record that such a condition is not generally covered would hardly support summary judgment for the defendant that no reasonable jury could find that this was such a condition within the meaning of the regulation. Your Honor, what I would say is that because of the statutory scheme that this is a case which was perfectly suited for summary judgment, that it is for a district judge to read through this difficult statute and look to see whether or not a plaintiff can make out the prima facie elements. It can be very compelling that somebody was uncomfortable or in pain and therefore they didn't come to work. Why isn't it actually a question for the jury to be given the statute, the regulation, and asked whether in this case the plaintiff had a serious medical condition, given the statute and the regulation? Your Honor, what I would say is that the plain reading and the plain language of the statute makes clear that this shouldn't go to the jury. If we're still talking about 115E, it is incredibly important for the court to focus on the language. It talks about continuing treatment to receive multiple treatments. Multiple treatments are recognized in the statute to be things like, God forbid, cancer. Somebody needs radiation, they need chemotherapy. You don't dispute that she received multiple treatments. We absolutely do. She didn't receive anything but one. She went in for an elective procedure where the doctor told her he could take more conservative means that would not require her absence from work, and she chose not to pursue those. That's a different question than the question whether she received multiple treatments. I mean, the doctor said, I need to see you again in a week, and then again a week after that, she received three treatments. What were those treatments the week after that? So I don't believe they were treatments for the condition as required. So the first time was when she presented on the 19th. That wasn't for treatment. She went to tell him that she was uncomfortable. He looked at it, and he had offered the conservative, non-surgical things that he could have done right there in the office. She then proceeded on the 28th to walk into the outpatient facility and have the elective procedure where they... And you agree it was treatment. That was the treatment, correct. That moment, and I believe that was the only treatment of the condition of the neoplasm. Why isn't the return to see how the patient is progressing and how the wound is healing, why isn't that treatment? It's not treatment of the condition. The doctor testified that as soon as he did the procedure, it was completely removed, and she did not have any neoplasm or condition at that time. But he didn't remove the sutures, he... No, no, I was just going to say he removed the sutures nine days after, which becomes a problem not under E, but becomes a problem under the 115. He had acute appendicitis, and had surgery to take care of that, and had come back to see the doctor on two successive occasions to see... He would say that those successive occasions to see whether the effects of the surgery are healing properly are not treatment? No, I wouldn't say that, Your Honor. In fact, if those were the facts of this case, we wouldn't be here today. Yeah, but I'm talking just about the aspect of whether when one has surgery to treat a condition, and one must return to see the doctor to see that the surgery is healing properly, that those returns to the doctor to see that the surgery is healing properly are treatment or not. You say that they are not. I'm not saying that they're not. I'm saying you can't look at it so isolated. The hypothetical that you gave is absolutely FMLA. A rupture of appendicitis requires an overnight stay in the hospital. So what we're talking about are the types of things which were not, in my opinion, meant to be covered by the statute. It is clear that the FMLA is not meant to cover every type of leave, every type of physical or mental condition. You may be right about that, but I'm just talking about, I'm just asking you about your argument that when one returns for supervision and monitoring of the recovery from surgery, that's not treatment. I don't think you could find a doctor in the world who would agree that the treatment, if the treatment begins with surgery to remove something that arguably is appropriate to remove, or whether it's appropriate or not, that the follow-ups are part of the treatment. I mean, if you ask a doctor at the outset, tell me everything that will be involved in the treatment. And the doctor said, well, the first stage is the surgical removal. The second stage is you come back to see me to see that the surgery is healing properly once, twice, three times, whatever it is. I mean, who would argue that those aren't all part of the treatment? I would absolutely agree that any doctor would tell you that, but that's not what the statute says, because if that were the case... The statute says treatment. Well, but the statute also says, for example, right, that cosmetic surgery is not covered. Dental procedures, when you go back... That would be perfectly correct. That's not what I'm talking about. I'm just talking about you might have something that's disqualified, but the issue is whether you have proved that she was not entitled. That's the issue, whether you, on your motion to summary judgment, proved it. And if you're banking yourself on the fact that she didn't have multiple episodes of treatment, I don't think that's a winner. Well, Your Honor, I wouldn't say that we're banking on it. What I would say is that when this case started, the complaint alleged incapacity in treatment. If you look at it, the case was litigated under the first provision under A. And the section of E about having multiple treatments for restorative surgery or a condition that would likely result in one was never part of this litigation. So the question is what... That part was never raised, you're saying? It only became raised in the summary judgments. It's not in the complaint. It's not the theory that's set forth. And after... There's no argument or waiver. It's fully briefed for us on appeal. It was fully briefed. But what I think is important to understand is, again, you look at the complaint, and this is a case where the plaintiff said that she had an emergency situation. She had an... I'm sorry. Could I... No, no. Under E1, is there any definition in the statute or the regulations of what it means to have, quote, restorative surgery and what the definition of an injury is? So I don't believe that there are any definitions that were listed in... For either one. ...either. My recollection is that reviewing it and reading it in the context that it was passed, it was understood to be types of things of what you would think of as an accident, a car accident, a fire, somebody... The regulation... Yes. The regulation says accident or other injury, so... Right. So my understanding, again, has always been that the other injury part were restorative things. For example, if, God forbid, somebody had breast cancer and they had a mastectomy, and you needed to then have the surgery, or you chose to, to have reconstructive surgery. It's not clear to me why, if you have surgery to remove a lesion, which is a harmful lesion on the foot, you're not restoring the foot to its prior condition before the lesion. Well, one of the things is it wasn't found to be harmful. It was benign. And the doctor said that she could have lived with it forever and never done anything, and that it was purely an elective surgery. That from a medical perspective, there was absolutely nothing that one required it and no less required it to be done right there. And importantly, I think, was that the doctor told her that it had... And she knew that it had not been approved and that the doctor had actually went to reschedule it because the hospital had agreed that... That's an interesting question. And the case doesn't turn on it, but how did... Having lived with the case, how did this happen? Here there's testimony that had she given the notice, even though the hospital says they think technically it was not a serious medical condition for the FMLA, they would have given her the leave. She plainly had the surgery. She was plainly incapacitated, according to her doctor, for a period of time. He said, don't go back to work for this period. You can go back later on in April. And in... I believe he actually testified... Just slightly differently. I believe his testimony was that his general practice is just for purposes of protective, that he tells people probably wise not to go out. He didn't tell her she absolutely couldn't work. And, in fact, he said he has patients that do go back to work, including, he said, lawyers and other people right away. So it wasn't he couldn't. So towards the beginning of that period, the hospital said, you've taken FMLA leave. You're fired. That... What's going on? Well, I don't believe that you've taken FMLA leave and you were fired. Unfortunately, this was an individual, again, while it has nothing to do with the current situation, about whether it's covered the condition. This was a woman who had a history of problems with adhering to the rules and the policies and the procedures, had been granted multiple FMLA leaves during her employment with, you know, and didn't get terminated or anything like that. That is not the hospital's policy. What happened here is she came in like she had had before.  And that said, if she did this again, went ahead with scheduled surgeries, which, interestingly, assuming, arguendo, that this fit into a serious health condition, there is a provision within the regulations that say for scheduled medical procedures like outpatient procedures, those always require 30 days. Those aren't the emergent type. I don't believe we need to get to the notice provision because of this. But to specifically answer your question about what's going on, the reality of the FMLA in today's workplace is that most employers do not question do you have a serious, they don't look to have something. They want people to take care of what they need to take care of, but they want to do it in a balanced way, a way that allows business to be run, that in a situation like this, that when it is and can be planned, whether or not it's technically a serious health condition, they let people take the time. But if everybody came to work and said, I'm not coming tomorrow or next week. So section D of, subsection D of section 115 is not an issue, but it refers to continuing supervision. Is there a distinction between continuing supervision and treatment? And if so, where would we be able to find out what that distinction is? I apologize, Your Honor. I didn't hear which section you were referring to. 115A, section 115D, small d? D, just before E. So it says, it refers to the employee or family member must be under the continuing supervision of, but need not be receiving active treatment. And I was just wondering if there's a distinction between continuing supervision and treatment. Your Honor, in all honesty, that wasn't a section that was, yeah, no, no, that was looked at. So I would love to look at it at its, you know, in its entirety. That might, yes, it is. Before you stop, I would like to have to know exactly what you point to with respect to why you were entitled to judgment, why you proved that she was not entitled to, that she did not satisfy the standards of serious health condition that are set forth in 825, 115E2. Yes, Your Honor. Exactly what is it that shows, what do you hang your hat on as to why you showed she's not entitled to that? Yes, Your Honor. We hang our hat on the testimony of her doctor, Dr. Sadhanani's testimony, which is provided in the record specifically says that he did not provide any additional treatments and did not do anything to treat the neoplasm. And we believe that a doctor's testimony about that. You're saying that you're hanging your hat on the fact that she didn't have multiple treatments. Is that what you're saying? Correct. Correct. And that's the only answer? Well, no, Your Honor, I wouldn't say it's the only one. I would also say, again, that the rest of the statute is four. So first you have to have a period of absence to receive the multiple treatments, and then the rest of the statute says, and those treatments have to be for restorative surgery. No, that's one. Yes, and then two, right? So if we read it together, it's any period of absence to receive multiple treatments, four going to two, a condition that would likely result in a period of incapacity of more than three consecutive days in the absence of medical intervention or treatment such as cancer, open paren, chemotherapy, radiation, severe arthritis, physical therapy, or kidney disease. And what we're hanging our hat on is that it was plaintiff's burden to put forth evidence. It will be plaintiff's burden at trial. But on a motion for summary judgment, it's your burden to show that she didn't come within it. Yes. I'm asking you, how exactly did you show it? And you say that it's because she didn't get multiple treatments, which doesn't impress me at all. And your second answer is because? Your Honor, it is that she did not receive any multiple treatments, and the doctor has made clear that there was no reason to think that this would ever result in any type of incapacity. Where did you say that this would never result in any incapacity if not? He recommended two forms of treatment, right? Either conservative treatment or surgery, right? Yes. Now, what this statute says, what this regulation says, is whether she would have three consecutive days of absence in the absence of any medical treatment. So where do you find anything that the doctor says that if this is untreated, if you don't have either conservative or surgery, nothing will happen, it won't matter, you won't have three days? Where does he say that? Your Honor, I believe that the record says, and I would be happy after we finish today to supplement to the court, I believe that there was testimony from Dr. Satinani that said that she could have lived with this for the rest of her life and not required anything, but that it was purely optional, again, that this was not a medical, it wasn't a condition that had any health impact on the plaintiff. And I would be happy to provide those citations and his testimony, the specific pages, to the court. Do you want to include this in the letter? Yes, I would be happy to. And would you also include in that letter where we could find in the record, because I'm looking at Dr. Satinani's deposition or testimony, where we could find in the record that he concluded that her condition would not likely result in a period of incapacity? Thank you very much. Thank you very much. And you should try to submit that letter. Can you do it by tomorrow? Absolutely. Close the business? Yes. Mr. Hassan. Your Honor, just briefly in terms of the back story of the case that Judge Raval inquired into, Counsel's right plaintiff has taken FMLA leave in the past. She has a flat foot condition, so she's had several problems with her feet. And they had terminated her previously for not providing notice. And then they told her if you get leave again, you have to give 30 days notice. But you can't do that. You have to follow the statute. You can't waive the rights of the statute, and you can't change the obligations under the statute. So this time around, when she wanted leave, they just insisted on 30 days for no reason. There was absolutely no benefit the defendant would derive from 30 days. They just want to, in essence, stick it to her because of this prior dispute. And they were correct when they saw the condition. They had approved similar conditions in the past under the FMLA, and they correctly concluded here again that this condition did qualify. This is why they never sought a second or third opinion to contradict it, because it was clearly a serious health condition within the meaning of the law. In terms of the multiple treatments, the Regulations 113, subsection 825-.113, and the cases that we cite on page 38 and 39 of our opening brief, clearly state that examinations and evaluations are considered treatment under the FMLA. That includes removal of sutures? Absolutely, Your Honor. I'm sorry. And what do you— Or changing dressings and so on. What are you relying on for that? 825—29 CFR 825.113 and the several cases cited on page 38 and 39 of our opening brief. As to her 3 days of incapacity, actual 3 days of actual incapacity, one conceivable theory is—and I want you to rely on this— that as a result of surgery, she had 3 days of incapacity. Because of surgery, she was incapacitated. And the doctor recommended it. Does that—do you rely on that? Because, I mean, it seems to me there's at least an argument, and I'm not sure what the answer should be, that if that is the incapacity one relies on, it means that anybody can go and say, well, you know, I'd like to have my ears changed so that the right is on the left side and the left is on the right side, and goes to a doctor and has that surgery, and as a result of the surgery has 3 days in which the doctor recommends, strongly recommends you have to be at bed rest and so forth. Anybody can do anything. I wonder whether that's a valid argument. Your Honor, you could make a decision as to your medical treatment. It may affect the notice requirement. Let's say you're not in pain, for example, and you could legitimately— I'm saying—what I'm asking you is are you relying, as one of your arguments, that she was incapacitated by the surgery, that as a result of the surgery she became incapacitated? Yeah, A1 and A2, that's the incapacity that we're referring to, and that's very typical. In fact, surgery causes incapacity more. Yeah, but supposing you have completely elective frolicsome surgery. I just would like to look better, and so I go and have this surgery, and the surgery causes me incapacity. Does that qualify? It qualifies for incapacity, but there might be another issue raised, whether or not you can do it within a week. You might need to give 30 days' notice if it's some type of surgery like that. But it does qualify as the incapacity, you argue, even though the incapacity was in no way medically called for. It's a close call, but it would, in my opinion, qualify. That is not this case where the plaintiff here was in serious pain and loss of function, and that directly related to her job. We don't know whether it is or it isn't. It's disputed. Yes. It's disputed to what degree the surgery was medically called for. Yes, Your Honor, and you're touching on a very important point, because this is summary judgment, and we probably seem to have forgot about that. It is summary judgment where it's not whether it's this or that. It's whether there's a genuine dispute that should be resolved at trial. At minimum, there are numerous disputes of material fact in the record and in the case, you just need one. I urge you kindly to report that to the district court. Would you briefly also address the notice provision, the 30-day notice provision? Your adversary alluded to this a little bit, that Dr. Sidani says that she, Ms. Pollard, asks him to do the treatment in a very short period of time, and he says in his deposition, I take it, that he could have done it a month or even more later. Yes. What Counsel was asking him about is whether she would die if she doesn't get the surgery, whether she would be crippled or very seriously harmed, and he said no. It's not an emergency. Would you have been opposed to Ms. Pollard asking you to do the treatment even if she wanted to do it 35 days later? Answer, not a problem. Was she in any danger if she had done it 30 days later? And he is just no. You believe there was benign. Answer, correct. Right, but Dr. Sidani testified for hours, and what he was talking about in that context, Counsel was getting, and I return to the point, whether she was going to be seriously harmed or died, whether it was an emergency. Another point is it wasn't an emergency. Maybe it was an urgency, and here's what the doctor said in general. This was the gist of his testimony. It was a benign soft tissue that was expanding, getting painful, obstructing the function of the patient, and, of course, it needed urgent care. So we're not saying it was an emergency. We're saying it was an urgency. And given the impact on her job, this was her foot which she used to work actively as a medical records clerk. The pain not only caused her suffering, but it obstructed her ability to perform her job as well. So the doctor is correct when he said it needed urgent care. We don't believe she would die. A lot of people work in pain, but that doesn't mean that it shouldn't be. Your Honor, I don't see that in the deposition transcript anywhere, that he says that, but that's what you rely on in part. A-244, I think it is. I'm looking at A-244. Okay. But that's what you rely on. Yes, Your Honor. And by way of follow-up, if you look at the plaintiff's testimony, her reaction to where she says, look, I went in. I told him I was in pain. I told him something was on my left foot. And this was in her deposition, not her declaration. I told him it was painful. And when he took off the shoe, he said, oh, he touched it. And I went, ow, like she was actually describing something she was feeling. He said, oh, you have a painful lesion or painful mass. And he went on to describe how it was reddish, how it was swollen. When he touched it, she reacted painfully. I think we had the benefit of your argument. Thank you very much. Thank you. We'll reserve the decision. And we'll hear.